CITY OF NORWALK *v.* CONNECTICUT STATE
BOARD OF LABOR RELATIONS ET AL.
(13105)
(13106)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued December 8, 1987—decision released March 8, 1988

*Joseph M. Celentano,* assistant counsel, for the appellant in the first case (named defendant).

*Jackson T. King,* with whom, on the brief, was *Frank J. Raccio,* for the appellants in the second case (defendant Norwalk Police Union, Local 1727, et al.).

*M. Jeffry Spahr,* assistant corporation counsel, with whom, on the brief, was *Mary Summer,* for the appellee in both cases (plaintiff).

COVELLO, J. The defendants, the Connecticut state board of labor relations and Norwalk Police Union, Local 1727, and Council 15, American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO, appeal from the judgment of the Superior Court sustaining the plaintiff's appeal from a decision by the named defendant ordering the plaintiff to reinstate Officer James Dolan to the Norwalk police department. We find no error.

On April 7, 1983, during the course of an arbitration hearing before the Connecticut board of mediation and arbitration (hearing panel) a recess was called. Counsel for the city of Norwalk, the city's representative at the arbitration hearing, telephoned the chairman of the city's board of police commissioners during the recess to discuss the status of the hearing. Counsel for the city then returned and announced to the hearing panel that the city would settle the matter by reinstating the police officer on whose behalf the union had filed the grievance underlying the arbitration hearing. Related issues such as back pay and seniority were to be reserved for later negotiation.

On April 13, 1983, the city's counsel wrote to the board of police commissioners requesting that the board vote on the "proposed settlement." That same day, he also wrote to the attorney for the defendant union, stating that the board of police commissioners had advised him that the action taken by the commissioner whom counsel had telephoned during the April 7 hearing recess "was unilateral on his part and without authority." On April 18, 1983, the board of police commissioners voted unanimously "not to negotiate the proposed settlement . . . and to continue on with the hearings."

On May 22, 1983, the defendant union filed a complaint with the Connecticut state board of labor rela-

tions (labor board), alleging that the city was refusing to comply with a grievance settlement in violation of General Statutes § 7-470 (a) (6).[1] On April 24, 1985, following hearings, the labor board ruled that the city's counsel was clothed with apparent authority to negotiate a settlement with the union, and that "the agreement [reached after the recess] . . . at the April 7, 1983 hearing was a valid, final and binding settlement of the Union's grievance." The labor board ordered the city to comply with the terms of the April 7 agreement.

On May 8, 1985, the city of Norwalk petitioned the Superior Court to set aside the decision and order of the labor board. After a review of the record, the court concluded that the city's representative was without authority, apparent or otherwise, to conclude a settlement with the union at the April 7, 1983 arbitration hearing, and that the decision of the labor board was therefore in error. Accordingly, the court granted the city's petition to set aside the decision and order of the labor board.

The rules that govern the determination of apparent authority in an agent require an examination of the acts of the principal, rather than of the agent. *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 140, 464 A.2d 6 (1983); *Lettieri* v. *American Savings Bank,* 182 Conn. 1, 8, 437 A.2d 822 (1980). " ' "Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." . . .' " *Beckenstein* v. *Potter & Carrier, Inc.*, supra, quoting *Lewis* v. *Michigan Millers Mutual Ins.*

[1] General Statutes § 7-470, the Municipal Employees Relations Act, provides in part: "PROHIBITED ACTS OF EMPLOYERS AND EMPLOYEE ORGANIZATIONS. (a) Municipal employers or their representatives or agents are prohibited from . . . (6) refusing to comply with a grievance settlement, or arbitration settlement, or a valid award or decision of an arbitration panel or arbitrator rendered in accordance with the provisions of section 7-472."

*Co.,* 154 Conn. 660, 665, 228 A.2d 803 (1967). The parameters of this doctrine, however, are sharply circumscribed when the principal is a municipal corporation. 3 E. McQuillin, Municipal Corporations (3d Ed. Rev.) § 12.52a, pp. 209–10, and vol. 10, § 29.02, pp. 199–200; see also *Pepe* v. *New Britain,* 203 Conn. 281, 293–94, 524 A.2d 629 (1987).

The Norwalk city charter provides that only the police commission is empowered to reinstate terminated employees of the police department. By charter as well as by statute,[2] the police commission may take action only at a public meeting that has been properly noticed. The city charter further requires a concurrence of two votes among the three members of the police commission for the transaction of business. "Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful." *Caldrello* v. *Planning Board,* 193 Conn. 387, 391, 476 A.2d 1063 (1984).

"[A]ll who contract with a municipal corporation are charged with notice of the extent of . . . the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract . . . ." 10 E. McQuillin, supra, § 29.02, pp. 199–200. "The city attorney cannot go beyond the powers conferred upon him. . . . Generally he has no authority to compromise claims, so that such an unauthorized compromise is not binding on the municipality." 3 E. McQuillin, supra, § 12.52a, p. 210.

___

[2] The Connecticut Freedom of Information Act, codified as General Statutes §§ 1-7 through 1-21K, and the Norwalk City Charter, article VIII, §§ 1-297 and 1-298, govern proceedings of the Norwalk board of police commissioners.

The defendant union is charged as a matter of law with knowledge of the prescribed mechanism by which the police commission may reinstate discharged police department employees and bind the city to its actions. " '[E]very person who deals with [a municipal corporation] is bound to know the extent of its authority and the limitations of its powers . . . .' " *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 704, 448 A.2d 180 (1982). Because the required affirmative vote had not been taken at a duly called meeting, the trial court was correct in concluding that counsel was without authority to bind the city to a settlement negotiated with the union.

A municipality may become bound to an agreement, despite its agent's lack of authority, by a subsequent ratification of the agreement. Ratification by the municipal body with power to do so has the equivalent effect of a prior authorization and binds the municipality just as though authority had been given initially. Id., 712; *Loomis* v. *Fifth School District,* 109 Conn. 700, 703–704, 145 A. 571 (1929). In the present case, however, the board of police commissioners took no steps that arguably could be construed as ratifying the April 7, 1983 agreement reached by city counsel and the union. On the contrary, the police commission formally rejected the proposed settlement when it learned of its terms.

There is no error.

In this opinion the other justices concurred.