[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
On December 13, 2002, this court granted a motion to substitute Betty Shipp Banks, Administratrix of the Estate of Robert Banks, as the plaintiff in this action, which had been commenced by Robert Banks before his death. The case concerns the demolition of a structure in New Haven that had been rendered unsafe by fire damage.
The defendants, the City of New Haven and its building inspector, Clarence E. Phillips, have moved for summary judgment on the ground, among others, that the plaintiffs claims are barred by several legal doctrines, including the doctrine of municipal immunity from liability for performance of discretionary governmental functions.
Although the plaintiff claims that another city employee, Frank Alvarado, engaged in conduct that made Robert Banks believe that his structure would not be demolished as scheduled, Frank Alvarado is not a defendant in this case.
Claims
By a ruling dated March 7, 2002, this court dismissed the first, third, fifth and seventh counts of the plaintiffs revised complaint dated February 28, 2001. In those counts, the plaintiff challenged the procedure followed by the City in demolishing a building Robert Banks owned at 121 Putnam Street in New Haven after it was rendered uninhabitable as a result of a fire. This court found that the plaintiff had failed to pursue the statutory appeal provided by Conn. Gen. Stat. § 29-405, which states that "Any person aggrieved by any order or decision of a building official may, within ten days of such order or decision, appeal therefrom to the superior court for the judicial district wherein such person resides . . ." CT Page 16647
The plaintiff filed a request for leave to file an amended complaint that not only eliminated the dismissed counts but also reworded the remaining counts.
The plaintiff claims in the first count of the amended complaint dated June 28, 2002, that the City and Phillips were negligent 1) in demolishing the burned structure after its unnamed agents, servants and/or employees" assured Banks that demolition would not occur for sixty days after April 9, 1998, and 2) in failing to honor a promise that the City would give him notice if it obtained bids for demolition. The plaintiff also alleges as a claim of negligence 3) that the defendants violated Conn. Gen. Stat. § 29-250 et seq and Sections 129-1 et seq. of the State Building Code by demolishing the property and charging him for demolition costs, 4) failing to enforce the order to demolish pursuant to the same statutes and regulations, and 5) failing to specify how the property was unsafe and what steps he need to take to make it safe.
The City asserts that the first two claims in the first count are barred by the doctrine of municipal immunity and that the last three are repetitions of the claims already dismissed by this court in its order of March 7, 2002. The plaintiff asserts that the claims of negligence come within the exception to immunity for acts that create a foreseeable risk of imminent harm to a foreseeable person.
In the second count, the plaintiff alleges that the defendant City, through its unnamed agents, servants or employees, negligently or recklessly misrepresented that it would forebear from demolishing his property and that it would inform him if it obtained demolition bids.
In the third count, the plaintiff claims that the City, through unnamed agents, servants or employees, induced the plaintiff to take no action to avoid demolition by representing that it would forebear for sixty days and provide notice if it intended to proceed. The plaintiff asserts that Banks detrimentally relied on these alleged promises.
In the fourth count, the plaintiff alleges that the City intentionally demolished Banks' property "such that it was readily apparent that they would cause harm to Banks. . . ." and that the actions of the City "did, in fact, cause [him] distress . . ."
In the fifth count, the plaintiff alleges that the City has a duty pursuant to Conn. Gen. Stat. § 7-465 to indemnify unnamed agents servants and employees who allegedly entered into an agreement to forbear from demolition for damages caused by the breach of that agreement. CT Page 16648
Standard of Review for Summary Judgment
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." LaFlamme v. Dallessio, 261 Conn. 247, 250
(2002); QSP, Inc. v. Aetna Casualty Surety Co., 256 Conn. 343, 351
(2001); Alvarez v. New Haven Register, Inc., 249 Conn. 709, 714 (1999);Nichols v. Lighthouse Restaurant, Inc., 246 Conm 156, 163 (1998);Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 481 (1997); Practice Book § 17-49.
The party moving for summary judgment bears the burden of proving the absence of a genuine dispute as to any material fact; and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Rivera v.Double A Transportation, Inc., supra, 248 Conn. 24. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's Medical Center,252 Conn. 363, 373 n. 7 (2000).
In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The test is whether a party would be entitled to a directed verdict on the same facts. Sherwood v. Danbury Hospital, supra, 252 Conn. 201; Serrano v.Burns, 248 Conn. 419, 424 (1999); Connell v. Colwell, 214 Conn. 242,246-47 (1990); Forte v. Citicorp Mortgage, Inc., 66 Conn. App. 475
(2001). In Connecticut, a directed verdict may be rendered only if, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. United Oil Co. v. UrbanRedevelopment Commission, 158 Conn. 364, 380 (1969); Vuono v. Eldred,155 Conn. 704, 705 (1967).
In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist. Nolan v. Borkowski, 206 Conn. 495, 500 (1998); Telescov. Telesco, 187 Conn. 715, 718 (1982).
Challenges to demolition process
The defendants correctly observe that the last three claims asserted in Count One repeat the challenges to orders of the building inspector that CT Page 16649 this court has previously dismissed for failure to follow the applicable statutory procedure. That ruling is the law of the case, and the plaintiff is not entitled to plead again claims that this court has previously dismissed. Cumberland Farms, Inc. v. Groton, 262 Conn. 45, 58
(2002); Gladysz v. Planning Zoning Commission, 256 Conn. 249, 260
(2001).
Negligence/Breach of Contract Claims
The rest of the claims asserted in the first count have been labelled as claims of negligence, however, what they actually allege is that the City was negligent in demolishing Banks' building because Frank Alvarado, director of the Livable Cities Initiative, promised Banks that demolition would be delayed and that he would be notified if demolition bids were obtained and the demolition were going to proceed. Though the plaintiff characterizes this claim as a claim arising from negligence, a party's characterization of its claim is not binding on the court. AmocoOil Co. v. Liberty Auto Electric Co., 262 Conn. 142, 152 (2002). At oral argument, plaintiffs counsel conceded that the plaintiff was alleging that a breach of a promise constituted negligence. It appears that this characterization is mostly the product of a desire to invoke Conn. Gen. Stat. § 7-465, which provides for indemnification for the negligent conduct of municipal employees but not for breach of contract, as is discussed below.
Because of the ambiguity in the manner in which this claim is pleaded, this court will consider both the claim of negligence and the claim of breach of promise.
A. Factual submissions
The parties have stipulated that in April 1997, the structure that the plaintiff owned at 121 Putnam Street was uninhabitable and in need of repair. They further have stipulated that Clarence Phillips, building official for the City, declared the structure unsafe and on April 18, 1997 caused an order to be served on the plaintiff that stated that the City would demolish the structure if the plaintiff failed to repair or demolish it within thirty days. The plaintiff neither demolished the structure nor obtained a building permit for the purpose of repairing it.
Clarence Phillips has filed an affidavit in which he stated that he was at all relevant times responsible for administering and enforcing the State Building Code in New Haven and that he was the official responsible under Section 9-28.1 of the Code of Ordinances of the City of New Haven CT Page 16650 for demolishing unsafe structures in the city. Phillips avers that the plaintiff never appealed the April 1997 order and did not comply with it. Phillips states that he "never made any promises nor entered into any agreement with the plaintiff or his representative relative to forbearance from demolishing the plaintiffs structure for any period of time" and "[t]hat as the Building Official I had no authority to make promises or enter into an agreement relative to forbearance from demolishing a structure that I had declared unsafe." Phillips further states that he never made any representations to the plaintiff or his representative concerning forbearance from demolishing the plaintiffs structure, and the demolition occurred in the time period between June 2 and June 19, 1998, more than a year after issuance of the demolition notice.
The only affidavit submitted on behalf of the plaintiff is that of Murray Trachten, the attorney who was representing Robert Banks in April 1998. Attorney Trachten states in his affidavit that on April 9, 1998, he had a telephone conversation with Frank Alvarado, the executive director of New Haven's Livable City Initiative and that he informed Alvarado that he was negotiating a claim for fire damage with Banks' insurance carrier and expected the arbitration would be completed within sixty days. Attorney Trachten states that Mr. Alvarado said that the property might be placed on the demolition list but that "his office would not demolish Mr. Banks' property within the sixty (60) day period, and that he would notify me should demolition bids for the property be obtained." Attorney Trachten wrote Mr. Alvarado a letter on April 9, 1998, stating that Alvarado had "assured my office that demolition will not take place within the sixty (60) day period and that you will notify me should demolition bids for this property be obtained." The plaintiff does not allege that Clarence Phillips, the building official who issued the demolition notice, ever agreed to a delay, and he produced no affidavits or other submissions to counter Phillips' denial of any such promise.
The City has not submitted any affidavit from Frank Alvarado in this case, but relies on Phillips' sworn statement that as the official charged with demolition of unsafe buildings, Phillips had not promised to delay or not to demolish the structure. The City also relies on the legal position that Alvarado had no authority to delay a demolition ordered by the City's building official and that the timing of demolition after the thirty days specified in a demolition has passed is a discretionary act and is not actionable pursuant to common law and statutory doctrines of governmental immunity.
B. Negligence claim
CT Page 16651
The plaintiff asserts Frank Alvarado stated that Banks' structure would not be demolished for sixty days or that the City was negligent in demolishing it after Alvarado allegedly made that representation. The plaintiff did not sue Alvarado but only the City and Phillips.
The City claims that it is entitled to qualified immunity under the provisions of Conn. Gen. Stat. § 52-557n (a)(2)(B) and at common law.
Phillips claims that he was not negligent because he was merely fulfilling his legal duty to demolish an unsafe structure and that the plaintiffs claim against him is barred by the doctrine of qualified immunity.
Conn. Gen. Stat. § 52-557n (a) provides in pertiment part that "a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee officer or agent thereof acting within the scope of his employment or official duties." Subsection (a)(2) of that statute provides, however, for an exception to such liability for performance of duties for which the method of performance is discretionary: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." The plaintiff does not claim that the City was engaged in a proprietary rather than a governmental function in demolishing his property. Connecticut General Statute § 7-148 (c)(7) (11) gives municipalities regulatory power over conditions that affect public health and safety.
Section 52-557n (a)(2)(B) thus creates a dichotomy concerning performance of governmental functions: except in some situations whose applicability is discussed below, municipalities are not liable for negligence in performing discretionary duties, but they are liable for negligence in performing ministerial acts. The same dichotomy exists at common law. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1988). In Elliott v. City of Waterbury, 245 Conn. 385, 410-11 (1998), the Supreme Court followed the premise that § 52-557n (a)(2) codifies the prior common law immunity of municipalities and their officials for governmental acts involving the exercise of judgment or discretion.
The plaintiff asserts that the characterization of duties as ministerial or discretionary is a matter for the trier of fact. On the contrary, such legal characterizations are legal issues that may be decided by examination of the nature of the conduct alleged. Evon v.CT Page 16652Andrews, 211 Conn. 501, 505 (1989) (affirming granting of motion to strike claim of negligence against municipality and its named officials); Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170
(1988) (affirming the granting of a motion to strike the claim of inadequate police protection). The plaintiff has not pleaded any facts that would support a conclusion that the acts claimed to have been negligent constituted ministerial acts, that is acts that are to be performed in a prescribed manner without the exercise of judgment or discretion. See Wright v. Brown, 167 Conn. 464, 471 (1975); Pluhowsky v.New Haven, 151 Conn. 337, 347 (1964). The plaintiff has identified no statute or regulation that required the defendants to act in a prescribed manner; rather, the responsibility to demolish unsafe buildings is part of the general police powers exercised by municipalities under Conn. Gen. Stat. § 7-148. The City Code, at § 9-28.1 authorizes the building official to cause an unsafe building to be demolished after notice to the owner. This court finds that this governmental duty was not shown to be ministerial and that the demolition of unsafe structures after the thirty-day grace period had elapsed was a matter of discretionary performance of a governmental function. Both statutory and common law governmental immunity bars liability for negligent performance of that function.
The plaintiff asserts that his claim comes within an exception to governmental immunity that allows a municipality to be liable for negligent acts that create an imminent danger of harm to an identifiable victim. The Connecticut Supreme Court has limited the application of this exception to situations in which a municipal official's failure to perform a discretionary act created a danger of personal injury that was foreseeable and imminent. Purzycki v. Fairfield, 244 Conn. 101, 108-109
(1998); Burns v. Board of Education, 228 Conn. 640, 650 (1994).
The Connecticut Supreme Court has never extended this exception to municipal immunity for the negligent performance of discretionary duties to harms other than physical injury except where a statute specifically required the municipality to protect property in a defined situationSestito v. Groton, 178 Conn. 520, 524-25 (1979) (Conn. Gen. Stat. §7-108 required town to protect persons and property from mob or riotous assembly.) Even more significantly, the Court has never applied the exception to a situation in which the conduct claimed to constitute the harm was the lawful exercise of the municipality's own police power, in this case, the demolition of a building it had declared unsafe over a year earlier.
As the Supreme Court explained in Burns v. Board of Education, supra, the scope of a foreseeable class of victims exception to governmental CT Page 16653 immunity has been delineated with reference to numerous criteria, including the imminence of harm, the voluntariness of the relationship that put the plaintiff in the zone of harm, the duration of the threat of injury and whether the persons at risk had the opportunity to protect themselves from harm." Burns v. Board of Education, supra,228 Conn. 647-48. The policy reason for this exception to governmental immunity is essentially that the plaintiff is powerless to protect itself from a harm of a kind from which that the government has undertaken generally to protect foreseeable victims. The plaintiff in the case before this court turns the concept on its head, attempting to apply it to prohibit a municipality from exercising its police power to demolish unsafe buildings after the plaintiff had more than a year to comply with an order to repair the structure.
This court finds that the exception does not apply as a matter of law, particularly where, as is discussed below, the alleged "negligence" is the failure to abide by an alleged contract to delay that was clearly beyond the authority of the employee who is claimed to have made it.
C. Negligence claim against Phillips
In the amended complaint, the plaintiff alleges that defendant Phillips "was the building official for the City of New Haven, and an employee and agent of the City of New Haven whose responsibilities included, but were not limited to, the demolition of buildings within the City of New Haven." (Amended complaint, para. 5.) The plaintiff makes no further factual averments that state what Phillips is alleged to have done; rather, the plaintiff alleges that the City "its agents, servants and/or employees" demolished the plaintiffs admittedly unsafe structure. The plaintiff does not allege that Phillips ever agreed to delay the demolition.
The plaintiff has not explained why it was negligent for Phillips, as the building official charged with demolishing unsafe buildings, to demolish a structure that the plaintiff admitted was unsafe at the time Phillips issued the demolition order in 1997 and at the time it was actually demolished.
The only basis for the claim against Phillips seems to be that Alvarado, who has not been shown to have had any authority with regard to demolition of unsafe buildings, had promised delay and that Phillips was negligent in completing the demolition without regard to Alvarado's alleged promise. As is discussed below, if a municipal employee enters into an agreement that he has no authority to make, the agreement does not bind the municipality or its officials. An unenforceable agreement CT Page 16654 cannot have supplied the standard of care for Phillips' execution of his duties under the City Code.
The motion for summary judgment is granted with regard to the negligence claims against defendant Phillips.
D. Claim of breach of promise
The plaintiff claims that the City acted negligently in demolishing the structure after the expiration of thirty days when another City employee had said that the demolition would not take place for sixty days. The plaintiffs actual claim is thus that the defendants breached an agreement that his counsel allegedly reached with Alvarado, who was not the building official for the City.
A municipality is not bound by agreements made by employees with no authority to bind it. The plaintiff has cited no statute, regulation, city charter, or city ordinance that suggested that the executive director of the Livable Cities Initiative had any authority to bind the City to an agreement concerning demolition or to assert any jurisdiction in an area expressly entrusted pursuant to the City Code to the building official.
Contracts that are beyond the legal authority of the public officials who enter into them are ultra vires and unenforceable. Sheehan v.Altschuler, 148 Conn. 517 (1961). As the Connecticut Supreme Court stated in Fennell v. Hartford, 238 Conn. 809, 813-14 (1996), "[g]enerally, no officer or board, other than the common council, has power to bind the municipal corporation by contract, unless duly empowered by statute, the charter, or authority conferred by the common council, where the latter may so delegate its powers. . . . It follows that agents of a city, including its commissions, have no source of authority beyond the charter. Their powers are measured and limited by the express language in which authority is given or by the implication necessary to enable them to perform some duty cast upon them by express language . . . All who contract with a municipal corporation are charged with notice of the extent of. . .the powers of municipal officers and agents with whom they contract, and hence it follows that if the . . . agent had in fact no power to bind the municipality, there is no liability on the express contract.e . . . Thus, every person who deals with a municipal corporation is bound to know the extent of its authority and the limitations of its powers." (Internal quotation marks and citations omitted.)
The plaintiff has failed to counter the defendants' evidence that demolition of unsafe buildings is in the province of the building CT Page 16655 official, and that he did not agree to any delay on behalf of the City.
The movants have established that they are entitled to summary judgment on the first count of the amended complaint.
Misrepresentation
In the second count, the plaintiff alleges that Robert Banks relied on Alvarado's misrepresentation that demolition would be further delayed. The plaintiff has not sued Alvarado, and it has failed to present any affidavits or other submissions to establish that Alvarado had authority to make any decisions or representations concerning this area of the city's police power, which the City has demonstrated was within the authority of the building official pursuant to the City Code. Having received a demolition order from the building official, the plaintiff was put on notice that the building official, not some other employee, had authority with regard to the demolition of unsafe structures.
The Connecticut Supreme Court has frequently stated that every person who deals with a municipality is bound to know the extent of its authority and powers of its agents and the ability of those agents to perform as agreed. Fennell v. Hartford, supra, 238 Conri. 814; Norwalk v. Board of Labor Relations, 206 Conn. 449, 452 (1988); John J. Brennan Construction v. Shelton, 187 Conn. 695, 704 (1982). Pursuant to this legal principle, the plaintiff had no basis for relying on the alleged statements of an employee with no authority to make representations on the subject matter, and the plaintiff cannot hold the City liable for Banks' own mistaken approach to the clear order, issued more than a year before by the building official, to repair or demolish the unsafe structure.
This claim could not survive a motion for directed verdict on the undisputed facts on the material issue of Alvarado's lack of authority to assert authority in an area expressly entrusted by municipal law to the building official. The motion for summary judgment on this claim is granted.
Promissory Estoppel
It is well established that a municipality cannot generally be estopped by the unauthorized acts of its officers. Dupuis v. Submarine Base CreditUnion, Inc., 170 Conn. 344 (1976). An exception is made where the party claiming estoppel would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents; however, the exception is to be applied "(1) only with great caution, (2) only CT Page 16656 when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations."Zoning Commission v. Lescynski, 188 Conn. 724, 732 (1982).
The municipal official with authority over the demolition of buildings, under the City Code, is the building official, not the executive director of the Livable City Initiative. Since the plaintiff has not demonstrated that Banks was induced by the official with authority in the matter, the Lescynski exception to the unavailability of estoppel against a municipality is inapplicable.
Equitable estoppel is, moreover, available only for protection and "cannot be used as a weapon of assault." Dickau v. Glastonbury,156 Conn. 437, 442 (1968); Hebb v. Zoning Board of Appeals, 150 Conn. 539,543 (1963).
By bringing a claim based on the alleged representation of an official whom the uncontradicted submissions establish was not authorized to delay demolition of a building found to be unsafe, the plaintiff impermissibly seeks to use estoppel as "a weapon of assault."
Summary judgment shall enter in favor of the defendants on this count.
"Intentional Act"
In the fourth count of the amended complaint, the plaintiff asserts that the City is liable because "the acts of the Defendant, City of New Haven, through its agents, servants, and/or employees, of demolishing the Plaintiff, Banks' property were done intentionally, recklessly, and upon information and belief, wantonly such that it was readily apparent that they would cause harm to the Plaintiff, Banks." (Amended complaint, para. 33.) The plaintiff claims that Banks was caused to suffer emotional distress and the loss of the structure. The plaintiff does not name Phillips as a defendant to whom this count is directed, and the plaintiff has not sued Alvarado.
The essence of this claim is that unspecified employees of the City intended to cause Banks harm. The complaint is devoid of any factual allegations concerning intent, and Clarence Phillips' affidavit states that he caused the structure to be demolished because he had a duty to demolish unsafe structures. The plaintiff stipulated that the structure was indeed unsafe, and his claim is therefore that the City is liable for intentionally doing what the law requires it to do with regard to an unsafe structure. The plaintiff has not provided any affidavit or other CT Page 16657 submission that would create a genuine dispute concerning any material fact concerning this claim.
Even if completion of a duty imposed by law were somehow construed to constitute malicious or wilful misconduct, Conn. Gen. Stat. §52-557n (a)(2)(A) provides that political subdivisions of the state "shall not be liable for damages to person or property caused by (A) Acts of omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct." Accordingly, summary judgment shall enter in favor of the City on this claim.
Indemnification
The plaintiff alleges in the fifth count of the amended complaint that the City must, pursuant to Conn. Gen. Stat. § 7-465 indemnify its employees for their negligence. The cited statute does not impose any liability on a municipality for breach of its own duties, rather, it imposes an obligation to indemnify a municipal employee who is found to be liable to a claimant.
The statute provides a right of indemnity to the employee "for all sums which such employee becomes obligated to pay by reason of the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property. . . if the employee at the time of the occurrence . . . was acting in the performance of his duties and within the scope of his employment. . .
To sustain an action against a municipality under this statute there must be a judgment against the employee under certain prescribed conditions. Ahern v. New Haven, 190 Conn. 77, 81 (1983); Kostyal v.Cass, 163 Conn. 92, 97 (1972); Altfeter v. Naugatuck, 53 Corm. App. 791, 799 (1999).
As has been pointed out above, the plaintiff did not sue Frank Alvarado, the alleged source of the promise to delay demolition. The plaintiff has claimed that defendant Phillips was at fault only because of the promise by Alvarado not to demolish the building, a claim essentially of breach of promise. The indemnification statute, § 7-465 does not require a municipality to indemnify on the basis of breach of contract or other claims not specifically stated in the text of the statute. Altfeterv. Naugatuck, supra, 53 Conn. App. 799; and negligence claims against Phillips are barred by the doctrine of qualified governmental immunity. There are thus no claims against Phillips to which the indemnification statutes applies. CT Page 16658
The motion for summary judgment on this claim is granted.
Conclusion
For the foregoing reasons, the defendants' motion for summary judgment is granted.
___________________ Beverly Hodgson Date Judge of the Superior Court CT Page 16659